**SALARY POLICY EMPLOYEE PANEL, Plaintiff–Appellee,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant–Appellant.**

No. 88–5175.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 8, 1988.

Decided Feb. 28, 1989.

Cecil D. Branstetter, R. Jan Jennings (argued), Branstetter, Kilgore, Stranch & Jennings, Nashville, Tenn., for Salary Policy Employee Panel, plaintiff-appellee.

A. Jackson Woodall (argued), Edward S. Christenbury, Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, Thomas F. Fine, Sr. Litigation Atty., Tennessee Valley Authority, Knoxville, Tenn., for Tennessee Valley Authority, defendant-appellant.

Before NELSON, Circuit Judge, and PECK and LIVELY,* Senior Circuit Judges.

DAVID A. NELSON, Circuit Judge.

Plaintiff-appellee Salary Policy Employee Panel, an association of labor organizations representing employees of the Tennessee Valley Authority, filed a "class action grievance" with TVA objecting to the agency's unilateral determination that it was legally bound to implement certain regulations of the United States Office of Personnel Management governing reductions in force. TVA rejected the grievance, and the Panel requested arbitration. TVA denied the request, taking the position that an arbitrator would have no authority to decide either the underlying dispute or the arbitrability of the dispute.

* The Honorable Pierce Lively became a Senior Circuit Judge on January 1, 1989.

The Panel then sued TVA in federal court, seeking an order requiring the agency to submit the underlying dispute to arbitration. Finding itself "unable to say with positive assurance" that the dispute over the applicability of the OPM regulations could not be found arbitrable under the terms of the governing collective bargaining agreement, the district court entered an order compelling TVA to proceed to arbitration. TVA has appealed.

Upon review, we think we can say with the requisite degree of assurance that the arbitration provision which the Panel seeks to invoke is not susceptible of the interpretation which the Panel asks us to give it. The arbitration provision gives an arbitrator no authority to decide whether OPM's regulations are legally binding on TVA, in our view, and we are sufficiently sure of that conclusion to hold that the order compelling arbitration must be reversed.

I

TVA has long recognized the Panel as the collective bargaining representative of certain of TVA's salaried employees, and a collective bargaining agreement was entered into between the agency and the Panel as long ago as 1950. With various modifications and supplements, the agreement remained in force at all times pertinent to this litigation.

The agreement consists of "Articles of Agreement," the present form of which was negotiated subsequent to our decision in *Salary Policy Employee Panel v. Tennessee Valley Authority,* 731 F.2d 325 (6th Cir.1984), plus 25 "Supplementary Agreements" negotiated pursuant to the Articles. The provisions of the Articles themselves "are not subject to arbitration," as Article VII declares. But paragraph A of Supplementary Agreement 11 authorizes employees to file grievances over the interpretation or application of the terms of a supplementary agreement or the application of a TVA "policy," and paragraph D provides that certain types of grievances may be appealed to arbitration. Supplementary Agreement 10, the only other supplementary agreement relevant to this inquiry, deals with reductions in force; we shall return to it presently.

As a government corporation, see 16 U.S. C. § 831 et seq., TVA is not an "employer" subject to the provisions of the Labor Management Relations Act. 29 U.S.C. § 152(2). In April of 1984, however, we held in the *Panel* case cited above that absent any valid reason not to apply the principles of arbitration law developed in the context of private sector labor disputes, such principles "shall be applied to labor disputes between the TVA and unions with which it has a collective bargaining agreement." 731 F.2d at 328.

Negotiations between TVA and the Panel were scheduled for September of 1984, and in a newsletter issued on June 12, 1984, TVA's management alluded to "a series of Panel lawsuits and arbitration decisions" that were said to have held matters outside the scope of the contract to be arbitrable. The newsletter reported that one of the agency's primary aims in the upcoming negotiations would be "to obtain language in the agreement which recognizes that TVA has agreed to negotiate and arbitrate on some issues but not on others."

That aim seems to have been accomplished. As revised in October of 1984, Article II A contains language that could well be read as providing a valid reason not to apply to TVA principles of arbitration law developed in the private sector context:

"TVA and the Panel recognize that their relationship is established under Section 3 of the TVA Act, these Articles of Agreement and supplementary agreements, and the history of relations between TVA and the Panel and *not pursuant to any other legislation not specifically applicable to TVA or to any other requirements.* The parties agree that the unique foundations of this relationship shall be considered in interpreting this bilateral agreement *rather than the principles developed for regulated labor relations arrangements.*" (Emphasis supplied.)

One of the "unique foundations" of the relationship between TVA and the Panel is

described thus in the first sentence of Article II A:

"TVA and the Panel recognize that TVA is an agency of, and is accountable to, the Government of the United States of America and therefore must operate within the limits of its legal authority and responsibility and cannot surrender the ultimate authority of the United States."

After listing certain matters as to which TVA agrees to bargain with the Panel, Article II A continues as follows:

"TVA is not by these Articles of Agreement agreeing to negotiate on the substance or application to individual employees of any of the following matters, and no TVA action respecting those matters shall be subject to arbitration through the dispute resolution procedures in these Articles of Agreement and supplementary agreements or otherwise:

\*    \*    \*    \*    \*    \*

3.   annual and sick leave days, holidays, travel and transfer reimbursements, Federal employee compensation laws, and other *laws and regulations applicable to TVA employees,*

\*    \*    \*    \*    \*    \*

7.   every other matter not explicitly covered in these Articles of Agreement, including supplementary agreements. (Such matters may be subject to negotiations if mutually agreed to by TVA and the Panel.)" (Emphasis supplied.)

Article VI, captioned **"Supplementary Agreements,"** provides in part as follows:

"Matters negotiated between TVA and the Panel pursuant to these Articles of Agreement are contained in Supplementary Agreements. \* \* \* *TVA may depart from such agreements when required by Federal law or regulation;* such departures are to be only from the part(s) of an agreement which the law or regulation affects." (Emphasis supplied.)

Supplementary Agreement 10, the first of the two supplementary agreements in-

volved in the case before us, is entitled **"REDUCTION IN FORCE."** It begins with the following **"Introduction:"**

*"In reductions in force TVA is subject to applicable regulations of the Office of Personnel Management* under section 12 of the Veterans' Preference Act. This supplement is an agreement as to the application of the regulations in TVA and as to procedures on matters not covered by the regulations. *If the regulations are changed* or new interpretations are received from the Office of Personnel Management, *TVA may change its practice accordingly;* in such case TVA notifies the Panel so that agreement can be reached on corresponding changes in this supplement." [1] (Emphasis supplied.)

After this introduction, Supplementary Agreement 10 sets out detailed provisions on reductions in force, explaining, among other things, how retention registers are prepared for various groups and subgroups of employees. "Within any subgroup in which employees will be terminated," the Supplementary Agreement provides, "employees are listed in order of their service dates...."

Supplementary Agreement 11, entitled **"GRIEVANCES,"** begins thus:

"An employee who disagrees with his or her supervisors as to the interpretation or application of the terms of a supplementary agreement, or as to the application of a policy to him/her as an employee, may file a grievance.

\*    \*    \*    \*    \*    \*

"A grievance may not be filed to change the substance or content of any negotiated policy, standard, or procedure contained in the supplementary agreements. Changes in these are made only through negotiations. In addition, a grievance may not be filed to challenge TVA's unilateral establishment, revision, or elimination of any policy, standard, or procedure nor the substance or content thereof."

---

**1.** TVA did, in fact, so notify the Panel with regard to the OPM regulations on reductions in force, and TVA proposed specific language for changes in the supplementary agreement.

After setting forth detailed provisions for filing and appealing grievances, Supplementary Agreement 11 provides that certain grievances may be appealed to arbitration, with the decision of the arbitrator to be accepted by both TVA and the Panel as "final." Other grievances—namely those involving disputes "as to the application of a TVA established policy"—may be appealed to a tripartite board. We are not concerned here with the tripartite board appeal, but only with the arbitration provision.

■ That provision, captioned **"ARBITRATION ON DISPUTE INVOLVING APPLICATION OF SUPPLEMENTARY AGREEMENTS,"** is contained in paragraph D of Supplementary Agreement 11. It is the first sentence of paragraph D that is of critical importance here:

> *"Only a grievance which involves* a disciplinary action (termination, suspension, demotion, or warning letter), or *a claim of misapplication or misinterpretation of an express provision in a supplementary agreement, may be appealed to arbitration* under this paragraph." (Emphasis supplied.)

The mechanics of the arbitration procedures thereafter spelled out in Supplementary Agreement 11D are not of interest, but the Agreement's statement as to the arbitrator's jurisdiction is:

> "The arbitrator's jurisdiction is limited to interpretation and application of the express terms of the supplementary agreements and [the arbitrator] does not have the power to add to, subtract from, or modify any term or provision of the agreements or to render a decision contrary to Federal laws or regulations applicable to TVA. Likewise, the arbitrator has no authority to rule on any matters not specifically set forth in these supplementary agreements nor to find any implied obligations with respect to these supplementary agreements. This paragraph, however, does not restrict the arbitrator in determining the intent of the parties on how specific language of the supplementary agreements is to be interpreted."

The particular class action grievance filed by the Panel in the case before us does not involve a disciplinary action. It is thus crystal clear, under Supplementary Agreement 11D, that the Panel's grievance may not be appealed to arbitration, and the arbitrator has no jurisdiction to decide it, unless the grievance involves a "claim of misapplication or misinterpretation of an express provision in a supplementary agreement...."

## II

By its terms, the Panel's class action grievance does not purport to involve a claim of "misapplication or misinterpretation" of an express provision of Supplementary Agreement 10 or any other supplementary agreement. The grievance is typed on a printed form one section of which calls for a statement of the **"ISSUE INVOLVED."** The form explains, parenthetically, that the statement of the issue involved "[s]hould include specific contract provision or TVA policy you believe was misapplied." No "specific contract provision" is cited by the Panel in its statement of the issue involved. The issue, rather, is described thus: "TVA adoption of OPM policy permitting performance ratings to be applied directly to RIF [reduction in force] regulations."

That somewhat cryptic statement of the issue must be read in the light of a letter the Panel sent TVA's General Manager on December 31, 1986, a few days before the filing of the grievance. The subject of the letter, as set forth immediately before the salutation, was identical to the language we have quoted from the grievance: "TVA Adoption of OPM Policy Permitting Performance Ratings to be Applied Directly to RIF Regulations." The letter goes on to say that the Panel cannot agree with TVA's Office of General Counsel that TVA has to apply OPM's revised policy on RIFs to 25,000 TVA employees who are opposed to it.

What TVA had done, as the district court's opinion explains, was to announce to its employees late in 1986 that

"it intended to implement a revised policy under which its employees would be awarded additional years of seniority in reductions in force (RIFs). Under the policy, the amount of additional seniority an employee would receive would depend upon the employee's annual supervisory performance appraisals."

The Panel's December 31 letter complained that

"when a future RIF occurs under this policy, a long-service 'proficient' employee whose work is fully adequate in all respects could be displaced by a shorter service employee with a better than fully adequate rating. The longer service employee would be riffed out of line of federal service date based upon a performance rating, which is subjective at best and not always accurate."

The Panel's letter ended with the following request:

"The Panel urges you to take into account the negative aspects of this OPM policy change on TVA and its employees and rescind the determination that TVA must implement these RIF revisions. TVA is far different than a typical federal agency and these policy changes need not apply to TVA based upon the long history of collectively bargained labor agreements and the unique circumstances upon which this relationship is based."

That request was echoed in the grievance itself, where a section of the grievance form calling for "action or relief requested" was filled in with these words: "Rescind the determination that TVA must implement these changed OPM regulations."

Under a straightforward reading of the grievance, as illuminated by the Panel's explanatory letter, the substance of the grievance cannot fairly be said to involve a "misapplication or misinterpretation" of Supplementary Agreement 10. There was no dispute as to what that agreement said or as to how it was intended to be applied; the agreement expressly provided that RIFs would be carried out on the basis of seniority, and TVA never denied that the agreement meant what it said. The dispute arose not from any misinterpretation or misapplication of the agreement, but from TVA's unilateral decision that the policy embodied in the agreement had to be changed. What the Panel was objecting to was the change itself.

To read the language of the collective bargaining agreement as authorizing an arbitrator to decide whether the change was required by law would, it seems to us, entail a singularly strained interpretation of the agreement. So, indeed, it may have seemed to the district court.

### III

The district court's decision that the dispute was arbitrable under the collective bargaining agreement did not turn on what the court believed the arbitration provision actually meant. Relying instead on principles developed for private sector labor relations regulated by the Labor Management Relations Act, the court adopted the following approach:

"If the Court is unable to say with *positive assurance* that the arbitration clause is not *susceptible* of an interpretation covering the asserted dispute, it must order arbitration, unless a specific provision in the bargaining agreement clearly and unambiguously excludes the dispute from arbitration. See *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 [585], 4 L.Ed.2d 1409, 1419, 80 S.Ct. 1347 [1354] (1960)." (Emphasis supplied.)

Given the decision of this court in *Salary Policy Employee Panel v. Tennessee Valley Authority*, 731 F.2d 325 (6th Cir.1984),[2]

**2.** In addition to holding that principles of arbitration laws developed in the private sector should be applied to TVA's collective bargaining agreements, our 1984 opinion declared that "the arbitrability of a labor dispute between TVA and the Panel is a question for the arbitrator in the absence of an express provision in the collective bargaining agreement excluding the particular grievance from arbitration, or the most forceful evidence of an intent to exclude the dispute from arbitration." 731 F.2d at 328. In the subsequent case of *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 651, 106 S.Ct. 1415, 1420, 89 L.Ed.2d 648 (1986), however, the Supreme Court held that "[i]t was for the court, not the arbitrator, to decide in the

the district court's approach would have been entirely appropriate prior to October of 1984. It is by no means clear to us that such an approach would be appropriate (or defensible) after that time, however, in light of the amended version of the Articles of Agreement that became effective on October 1, 1984. In the amended version of Article II A, as noted above, the parties expressly agreed that "the principles developed for regulated labor relations arrangements" in the private sector would not even be "considered" in interpreting the collective bargaining agreement between the Panel and TVA.

One of the key principles developed for labor relations arrangements in the private sector has been described by the Supreme Court in the following terms:

"where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (citations omitted).

Whether there ought to be any corresponding presumption of arbitrability where TVA is concerned is a question we should not wish to decide without a better understanding than this record affords of TVA's own labor relations history. But until very recently, at least, the history of the relationship between most governmental bodies and their labor unions would have afforded no basis at all for creating a presumption in favor of arbitrability.

■ Even if it were to be concluded that TVA's unique history justifies a presumption of arbitrability comparable to that which exists in the private sector, we do not believe that the language of the narrowly drawn arbitration clause of Supple-

mentary Agreement 11D, when read in the context of the collective bargaining agreement as a whole, would make the presumption applicable. The arbitration clause in *AT & T Technologies* was a "broad" one, as the Supreme Court pointed out, providing for arbitration of *"any* differences arising with respect to the interpretation of [the] contract or the performance of *any* obligation [t]hereunder...."  475 U.S. at 650, 106 S.Ct. at 1419 (emphasis supplied). Because the clause was as broad as it was, the Court said, a presumption of arbitrability was "particularly applicable." *Id.* "In such cases," the Court continued, quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960), " '[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.' " *Id.*

The case at bar is not one of "such cases," in our opinion, because the arbitration clause in this case was carefully drawn to be exclusive rather than inclusive. The distinction, as the Court of Appeals for the Ninth Circuit recently had occasion to declare, is "crucial." *Teamsters Local 315 v. Union Oil Co.,* 856 F.2d 1307, 1311–12 (9th Cir.1988). Far from providing for arbitration of "any" differences arising with respect to the performance of "any" obligation under the contract, the arbitration clause that is before us in this case begins by saying that "[o]nly a grievance which involves a disciplinary action," or *only* a grievance which involves "a claim of misapplication or misinterpretation of an express provision in a supplementary agreement" is arbitrable. (Emphasis supplied.) As we have already seen, the class action grievance filed by the Panel does not fit that description, and "only" grievances that do fit it are supposed to be subject to arbitration.

If the collective bargaining agreement does not affirmatively provide for arbitra-

---

first instance whether the dispute was to be resolved through arbitration." In the case at bar the district court recognized, correctly, that

the arbitrability question was for the court to decide, not the arbitrator.

tion of a given type of grievance, the grievance simply is not arbitrable. The "first principle" enshrined in the famous Steelworkers Trilogy[3], as the Supreme Court said in *AT & T Technologies*, 475 U.S. at 648, 106 S.Ct. at 1418, "is that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (Citations omitted.)

The argument in the case at bar that the Panel's class action grievance does fit the narrow description of grievances that the parties agreed should be arbitrable is not persuasive. As summarized by the district court, the argument runs as follows:

"In essence, the Panel's dispute is that TVA violated the parties' bargaining agreement by unilaterally and incorrectly determining that TVA is bound by, and must adopt and implement a policy consistent with, the credit-for-performance provisions of the recently issued OPM regulations regarding RIFs. Although TVA vehemently contends that it is bound by those provisions and that the Panel so agreed in Supplementary Agreement 10(A), Supplementary Agreement 10(A) does not provide that TVA is subject to 'all' OPM regulations regarding RIFs. Rather, Supplementary Agreement 10(A) provides that TVA is subject only to 'applicable' OPM regulations under section 12 of the Veterans' Preference Act. The Panel's grievance, therefore, may be reasonably construed to allege that TVA misinterpreted an express provision in Supplementary Agreement 10(A)—'applicable'—by unilaterally determining that TVA is bound by the recently issued OPM regulations." (Footnotes omitted.)

The Panel never contended, as far as we have been able to tell from the record, that TVA "misinterpreted" an express provision in Supplementary Agreement 10(A), and it would be wrong to construe the Panel's grievance as alleging a misinterpretation of any such provision. Supplementary Agree-

ment 10(A), does say, to be sure, that TVA is subject to "applicable" OPM regulations—a fact that would obviously be true whether the supplementary agreement pointed it out or not—but the Panel's grievance did not assert that TVA had misinterpreted the truism expressed in Supplementary Agreement 10(A). The Panel's position, rather, was that TVA's conclusion that the OPM regulations were indeed applicable was wrong as a matter of law, while the content of the OPM regulations was undesirable as a matter of policy.

Nor did the Panel's grievance involve a claim of misapplication of the supplementary agreement. We have not been favored with a copy of the actual announcement issued by TVA late in 1986, but the district court's description of it does not suggest that TVA was announcing how Supplementary Agreement 10 would henceforth be applied; what the agency announced, rather, was that "it intended to implement a revised policy...." It was the adoption of the new policy that the Panel objected to, not the application of an existing policy.

The Panel objected strenuously to TVA's revising the policy "unilaterally," but Supplementary Agreement 11(A) says that "a grievance may not be filed to challenge TVA's unilateral ... revision ... of any policy...." Unless the change announced by TVA late in 1986 was not really a revision of a "policy"—and both the Panel and the district court said it was—this exclusion renders any presumption of arbitrability inapplicable to the present dispute. *Cf. International Ass'n of Machinists v. Republic Airlines, Inc.*, 829 F.2d 658, 660 (8th Cir.1987).

More to the point, perhaps, the announced change in policy as to RIFs unquestionably represented a departure from a supplementary agreement, and a departure that TVA contended was required by federal regulation. The Articles of Agreement, as we read them, clearly and unam-

---

**3.** *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347,

4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

biguously rule out arbitration in such cases.

Article VI A provides that "TVA may depart from [supplementary] agreements when required by Federal law or regulation...." Nothing in the collective bargaining agreement makes a misapplication of Article VI A subject to arbitration; on the contrary, Article VII provides that the provisions of the Articles themselves "are not subject to arbitration."

■ Article II A, moreover, provides that "no TVA action" respecting any of a list of matters that includes "laws and regulations applicable to TVA employees" is to be "subject to arbitration." If words have meaning, Article II A thus says that an action taken by TVA with respect to federal regulations applicable to TVA employees shall not be subject to arbitration.

It has been suggested that Article II A provides only that actions respecting federal regulations that are *really* applicable to TVA employees may not be reviewed by an arbitrator, and the question whether a federal regulation is or is not applicable has not been excluded from the arbitrator's ken. The suggestion strikes us as ingenious, but wrong.

In the first place, the arbitrator's jurisdiction does not extend to the applicability of federal regulations because the arbitration clause says it does not. "The arbitrator's jurisdiction is limited to interpretation and application of the express terms of the supplementary agreements," under Supplementary Agreement 11D, and the applicability to TVA of regulations promulgated by OPM does not turn in any way on either the interpretation or the application of the express terms of a supplementary agreement. The applicability of OPM regulations is simply not the sort of question that has been placed within the arbitrator's "limited" jurisdiction.

In the second place, the arbitration clause contemplates that the arbitrator's decision on a question within his jurisdiction—a question, that is, of the interpretation and application of the terms of the supplementary agreements—shall be a "final" decision: "The decision of the arbitra-

tor shall be accepted by both TVA and the Panel as final." But as the district court's opinion properly acknowledges, a decision by the arbitrator on the applicability of the OPM regulations would not have to be final. "If the arbitrator renders a decision contrary to federal law or a regulation applicable to TVA," the court says in footnote four of its opinion, "he or she will have exceeded their [sic] authority under the bargaining agreement *and the Court, on application of either party, could vacate the arbitrator's order* pursuant to 9 U.S.C. 10(d) (1970)." (Emphasis supplied.)

To read this collective bargaining agreement as permitting the arbitrator to render a non-final decision on the applicability of regulations promulgated by another federal agency is to read into the agreement a grant of authority we have been unable to find there, while reading out of the agreement provisions that seem plainly to exclude arbitration of such an issue. We express no opinion, of course, on the question whether TVA is correct in its conclusion that the OPM regulations are applicable to it. We hold only that the applicability of the OPM regulations to TVA is not subject to arbitration under the collective bargaining agreement.

REVERSED.