NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0959n.06
Filed: December 8, 2005

Nos. 04-5991

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STEELWORKERS OF AMERICA,
AFL-CIO, CLC; UNITED STEELWORKERS
OF AMERICA, LOCAL NO. 9423,

      Plaintiffs-Appellees,              ON APPEAL FROM THE UNITED
                                      STATES DISTRICT COURT FOR THE
v.                                 WESTERN DISTRICT OF KENTUCKY

CENTURY ALUMINUM OF KENTUCKY,

      Defendant-Appellant.
_____/

**Before:**     **CLAY and GIBBONS, Circuit Judges; STEEH, District Judge.**[*]

    **GEORGE C. STEEH, District Judge.** Plaintiffs United Steelworkers of America, AFL-

CIO, CLC, and United Steelworkers of America, Local 9423 (collectively, USWA) filed suit to

compel arbitration of a union member's alleged wrongful discharge from Defendant Century

Aluminum of Kentucky. Century Aluminum argued that the discharge decision was not subject to

arbitration under the terms of the employee's "Last Chance Agreement." On cross-motions for

judgment on the pleadings, the district court granted USWA's motion, denied Century Aluminum's

motion, and ordered the matter referred to arbitration. Because we find that the collective bargaining

agreement created a strong presumption of arbitrability and that the "Last Chance Agreement" did

---

[*] The Honorable George Caram Steeh, United States District Judge for the Eastern District
of Michigan, sitting by designation.

not clearly exclude the question of the employee's factual guilt from arbitration, we **AFFIRM** the district court's order.

## I.
## BACKGROUND

USWA and Century Aluminum are parties to a collective bargaining agreement (CBA) covering production and maintenance employees at Century Aluminum's plant in Hawesville, Kentucky. The CBA became effective on April 1, 2001, and runs through April 1, 2006. The parties and union member Bill Brown, a covered employee, signed a December 13, 2002 "Last Chance Agreement" (LCA), which provides in part:

> 1. All Parties to this Last Chance Agreement agree that violations of the Century Aluminum Rules of Conduct by Bill Brown are grounds for the termination of his employment and seniority with Century Aluminum.
>
> *       *       *
>
> 3. All Parties to this Last Chance Agreement agree that Bill Brown's continued employment with Century Aluminum is subject to his compliance with the following conditions and each of them:
>
> *       *       *
>
> (b) Starting on January 1, 2003, and continuing thereafter for a two calendar years period, Bill Brown's employment and seniority may be terminated at the sole discretion of Century Aluminum's management for any single violation of the Attendance Policy that warrants written discipline; or any single violation of the Rules of Conduct that warrants written discipline regardless of the nature of the violation. In other words, so that there is no misunderstanding between the Parties, any single written discipline accumulated by Bill Brown under the Attendance Policy or the Rules of Conduct during the two calendar year period may result in the termination of his employment and seniority at the sole discretion of Century Aluminum's management[.]
>
> *       *       *
>
> 4. All Parties to this Last Chance Agreement agree that if Bill Brown's employment and seniority are terminated by Century Aluminum pursuant to above Paragraph 3,

2

neither the termination nor any issue of the termination will be subject to the grievance and arbitration provisions of the collective bargaining agreement then in effect between United Steelworkers of America Local Union 9423 and Century Aluminum.

\* \* \*

7. Bill Brown agrees as follows: I understand under this Last Chance Agreement that my employment status is still at risk, that I am expected to follow fully and completely the Attendance Policy and the Rules of Conduct of Century Aluminum which I have read and understand, that I may be subject to the immediate termination of my employment and seniority at the sole discretion of Century Aluminum's management for any violation of the Attendance Policy or the Rules of Conduct that would warrant a written warning during the two calendar year period discussed in this Last Chance Agreement regardless of the type and severity of the discipline which would have otherwise been imposed for a violation/incident, and that such termination of my employment and seniority will not be subject to grievance or arbitration. . . . .

On July 24, 2003, Brown was issued a written warning for violating Century Aluminum's Rules of Conduct by allegedly telling a supervisor on July 9, 2003 that "there are black people and there are niggers and that Cathy is a nigger," contributing with "other statements and actions" in creating a hostile work environment. Brown was fired after receiving the written warning. On July 30, 2003, Century Aluminum refused to process a July 28, 2003 grievance challenging Brown's discharge, asserting that Brown's termination was not grievable pursuant to the terms of the LCA. USWA filed suit in district court on January 20, 2004 to compel arbitration of Brown's discharge under the provisions of the parties' CBA. On cross-motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the district court issued a July 6, 2004 opinion and order granting USWA's motion, and denying Century Aluminum's motion, upon concluding that: (1) the CBA contains a broad arbitration clause creating a presumption of arbitrability; and (2) consistent with this presumption of arbitrability, the court could not "say with positive assurance" that the LCA's language excluded Brown's grievance from arbitration. Judgment in favor of USWA entered

3

the same day, and Century Aluminum filed a timely notice of appeal with this Court on August 6, 2004.

## II.
## DISCUSSION

### A.  Standard of Review

This Court reviews a district court's order granting a Rule 12(c) motion for judgment on the pleadings *de novo*.  *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001).  The standard of review is the same as the standard of review applicable to a motion to dismiss under Rule 12(b)(6), that is, in construing the pleadings and evidence in a light most favorable to the party opposing the motion, whether that party can prove any set of facts in support of its claim that would entitle it to relief.  *Id.* (citing  *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir.1999)).

### B.  Presumption of Arbitrability under CBA

Century Aluminum initially contends that the CBA's  arbitration clause is narrowly drawn, and therefore USWA is not entitled to a presumption of arbitrability as to Brown's grievance, citing *Salary Policy Employee Panel v. TVA*, 149 F.3d 485, 490 (6th Cir. 1998) ("*Salary Policy I*") and *Salary Policy Employee Panel v. TVA*, 868 F.2d 872, 877 (6th Cir. 1989) ("*Salary Policy II*").

The Supreme Court has made it repeatedly clear that:

where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).  The presumption of arbitrability is particularly applicable to broad arbitration clauses. *AT & T Technologies*, 475 U.S.

4

at 650 (finding presumption of arbitrability particularly applicable to arbitration clause covering "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder"); *United Steelworkers of America v. Mead Corp.*, 21 F.3d 128, 132 (6th Cir. 1994) (finding presumption of arbitrability particularly applicable to arbitration clause covering grievances "involving the interpretation of, or compliance with, this Agreement"); *International Union, UAW v. United Screw & Bolt Co.,* 941 F.2d 466, 472-473 (6th Cir. 1991) (finding presumption of arbitrability particularly applicable to arbitration clause covering "matter[s] involving the interpretation or application of, or compliance with any of the terms of this Agreement").

The parties' CBA provides for arbitration of a "grievance" if it is not settled at the third step of the grievance process. CBA, Article 12, § 5, para. 3.

> "Grievance" as used in this Agreement is limited to a matter which involves disputes concerning the interpretation or application of or compliance with the provisions of this Agreement. Claims relating to benefits denials, other than claims relating to benefit denials by the Steelworkers Pension Trust, "the Trust," and the Steelworkers Health and Welfare Fund, "the Fund," shall be processed through the grievance procedure. Claims relating to benefit denials by the Trust and the Fund shall be processed through the applicable ERISA internal procedures.

CBA, Article 12, § 3.

Brown's discharge grievance does not implicate an ERISA benefit denial, the only dispute expressly excluded from the grievance process and arbitration by the CBA. Century Aluminum's reliance on the *Salary Policy Employee Panel* cases involving clauses expressly excluding certain disputes from arbitration is thus misplaced. *See Salary Policy I*, 149 F.3d at 489, 491-93 (finding presumption of arbitrability inapplicable to clause reserving to employer "questions concerning the appropriateness of a proposed bargaining unit" with respect to grievance challenging proper

5

bargaining representative for new job classification); *Salary Policy II*, 868 F.2d at 872, 877 (finding presumption of arbitrability inapplicable to clauses limiting arbitration to "only a grievance which involves a disciplinary action" or "only a grievance which involves 'a claim of misapplication or misinterpretation of an express provision in a supplementary agreement'" with respect to grievance challenging legal effect of OPM reduction-in-force regulations upon employer). The CBA language of Article 12, § 3, defining an arbitrable "grievance" to include "disputes concerning the interpretation or application of or compliance with the provisions of" the CBA, constitutes a broad arbitration clause analogous to the arbitration clauses previously held to warrant a strong presumption of arbitrability. *AT & T Technologies*, 475 U.S. at 650; *Mead Corp.*, 21 F.3d at 132; *United Screw & Bolt Co.,* 941 F.2d at 468, 472-73. Indeed, execution of the LCA evinces the parties' shared belief that Brown was entitled to grieve and arbitrate a discharge dispute under the CBA. For these reasons, a strong presumption of arbitrability arises from the language of the parties' CBA with respect to USWA's grievance challenging Brown's termination.

## C. Scope of Exclusion of Arbitrability under LCA

Century Aluminum contends in the alternative that the language of the LCA overcomes any presumption of arbitrability arising under the CBA by expressly stating that "neither the termination nor any issue of the termination will be subject to the grievance and arbitration provisions of the collective bargaining agreement[.]" LCA, para. 4. Century Aluminum argues that the phrase "any issue of the termination" unambiguously includes the issue of whether Brown in fact committed an act in violation of the Rules of Conduct, as he is accused. We disagree.

An express provision excluding an issue from arbitration which allows a court to say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

6

asserted dispute" rebuts the presumption of arbitrability. *AT & T Technologies*, 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 582-83). Conversely, if an LCA provision attempting to exclude a dispute from arbitration is equally consistent with opposing interpretations, and the language employed does not "clearly and unambiguously describe[] the issue or issues excluded from arbitration," the LCA language "cannot be said to *expressly exclude* that issue." *United Steelworkers v. Lukens Steel Co.*, 969 F.2d 1468, 1476 (3d Cir. 1992) (emphasis in original). Language in an LCA stating that the union employee "will be afforded an opportunity to plead his case before the Disciplinary Commission," and that "neither the employee nor the Union shall have recourse through the arbitration/grievance procedure to protest the suspension or disposition invoked by the Disciplinary Committee," was found by the Third Circuit to be susceptible to the union's interpretation of a bifurcation of the threshold issue of guilt and the issue of punishment, with only the latter expressly excluded from arbitration. *Id*. at 1475-78. Consequently, the *Lukens Steel* court concluded that the issue of whether employees subject to the LCA had in fact committed violations of company drug policies remained subject to the arbitration/grievance procedure. *Id*. at 1478.

A panel of this Circuit applied the reasoning in *Lukens Steel* in concluding that an LCA providing that "any violation of the Company policy or rules may result in discharge and the Employee and/or union may not challenge the discharge in the grievance or arbitration procedure" was susceptible to a reasonable interpretation that only the final question of punishment was expressly excluded from arbitration. *Pace International Union v. Vacumet Paper Metalizing Corp.*, No. 02-6067, 91 Fed. Appx. 380, 383 (6th Cir. Jan. 12, 2004) (unpublished) (citing *Lukens Steel Co.*, 969 F.2d at 1476-78). "Because the LCA is susceptible to more than one reasonable interpretation,

7

we must resolve the ambiguity in favor of arbitrability." *Id.* (citing *AT & T Technologies*, 475 U.S. at 650).

The language used in Brown's LCA, stating that "neither the termination nor any issue of the termination will be subject to the grievance and arbitration provisions of the collective bargaining agreement," is sufficiently ambiguous to accept as reasonable USWA's interpretation that only the penalty of termination, and issues related to the penalty of termination, are expressly excluded from arbitration under the CBA. Nothing prevented Century Aluminum from clearly describing that "any issue of termination" included the issue of factual guilt. *See Lukens Steel*, 969 F.2d at 1476. Brown's agreement that he "may be subject to the immediate termination of my employment and seniority at the sole discretion of Century Aluminum's management for any violation of the Attendance Policy or the Rules of Conduct that would warrant a written warning" only adds to the ambiguity by suggesting that his termination at Century Aluminum's sole discretion arises only if Brown's conduct factually *warranted* a written warning, an issue not expressly included within the phrase "any issue of the termination." Resolving doubts in favor of arbitration as provided for under the CBA, we cannot say with positive assurance that the only reasonable interpretation of the LCA expressly excludes the issue of Brown's factual guilt from arbitration. *AT & T Technologies*, 475 U.S. at 650. On *de novo* review, Century Aluminum cannot avoid arbitration of USWA's grievance filed on behalf of Brown which asserts his innocence of the claimed rule violation. *Ziegler*, 249 F.3d at 511-12.

### III.
### CONCLUSION

8

We **AFFIRM** the district court's order granting USWA's motion for judgment on the pleadings, denying Century Aluminum's motion for judgment on the pleadings, and compelling referral of the grievance to arbitration for a determination of Brown's factual guilt or innocence.