**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 14a0289n.06**

**No. 12-1633**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 18, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| O-N MINERALS CO., dba Carmeuse Lime & Stone, Calcite Plant, | ) ) ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS & HELPERS, CEMENT, LIME, GYPSUM, AND ALLIED WORKERS DIVISION, AFL-CIO; LOCAL LODGE NO. D500, | ) ) ) ) ) ) ) ) | |
| Defendants-Appellants. | ) ) ) | |

**BEFORE:  MOORE and GRIFFIN, Circuit Judges; and KORMAN, District Judge.**[*]

**KORMAN, District Judge.** Appellee O-N Minerals Company (the "appellee" or the "Company") and appellants the Cement, Lime, Gypsum and Allied Workers Division of the International Brotherhood of Boilermakers, and, specifically, its local affiliate Local Lodge No. D500 (collectively, the "appellants" or the "Union"), are parties to a collective bargaining agreement (the "CBA" or the "Agreement").  This case arises out of the parties' conflicting interpretation of the CBA provision pertaining to the Company's obligation to contribute to an employee pension

---

[*] The Honorable Edward R. Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

fund at a specified rate. After receiving a request from the Union to appoint an arbitration panel to resolve the dispute, the Company commenced an action for a declaratory judgment in the United States District Court for the Eastern District of Michigan seeking a ruling that the Union could not seek or compel arbitration of its grievance. The Union filed a counterclaim seeking an order to compel arbitration. The district court granted summary judgment in favor of the Company on the grounds that an arbitrator, under the terms of the CBA, lacked the authority and jurisdiction to resolve the grievance.

## BACKGROUND

The Company is a Michigan corporation that operates a limestone quarry and processing plant near Rogers City, Michigan. (R. 1 at 2, Pg ID at 2). The Union represents the employees of the Company. (R. 1 at 2, Pg ID at 2). On August 1, 2008, the parties entered into the CBA for the purpose of determining "rates of pay, hours of work and other conditions of employment" of the Company's employees. (R. 1-2 at 2, 5, Pg ID at 13, 16). This dispute arises out of the interaction of three provisions of the CBA, which establish, respectively, the hourly wages of employees, the contribution scale for the pension fund and the procedure by which grievances between the parties are to be settled. (R. 1-2 at 16, 42, 55, Pg ID at 26, 52, 65).

Article VII of the CBA sets the "standard hourly wage scales" for various types of employees and further provides that employees receive incremental pay raises for each year the CBA is in effect. (R. 1-2 at 16, Pg ID at 26). A "Dock Technician I," for example, earns $19.00 per hour in year one of the Agreement, $19.25 in year two, $19.73 in year three and $20.22 in year four. (R. 1-2 at 16, Pg ID at 26). Appendix A of the CBA provides that the Company is to make contributions

to the Boilermaker-Blacksmith's National Pension Trust (the "Pension Trust"), a pension fund benefitting the Company's employees that is operated by the Union's national affiliate. (R. 1-2 at 55-56, Pg ID at 65-66; R. 13-2 at 2, Pg ID at 368). For each hour worked by an employee, the Company is to contribute $2.10 to the Pension Trust in year one of the Agreement, $2.20 in year two, $2.25 in year three and $2.30 in year four. (R. 1-2 at 56, Pg ID at 66).

Article XII establishes procedures for the resolution of "grievances" between the parties. (R. 1-2 at 42, Pg ID at 52). The CBA defines the term "grievance" as "limited to a complaint or request of an employee which involves the interpretation or application of, or compliance with, the provisions of this Agreement." (R. 1-2 at 43, Pg ID at 53). "The grievance procedure," according to Article XII, "may be utilized by the Union in processing grievances which allege a violation of the contract, and all referenced State and Federal Law." (R. 1-2 at 48, Pg ID at 58). Steps 1 through 4 of the "Grievance Procedure" establish an internal dispute resolution process, providing the parties with a framework to hold meetings "in an attempt to reach a mutually satisfactory settlement." (R. 1-2 at 43-45, Pg ID at 53-55). If, however, these procedures fail to achieve a satisfactory settlement, Step 6 enables the parties to appoint an "impartial arbitrator" to resolve the grievance. (R. 1-2 at 46-47, Pg ID at 56-57). The decision of an arbitrator on any issue properly before him is final and binding upon the parties. (R. 1-2 at 46, Pg ID at 56).

Nevertheless, the CBA limits the scope of an arbitrator's authority and jurisdiction over the parties. Step 6 of the Grievance Procedure provides:

> An arbitrator to whom any grievance shall be submitted in accordance with the provisions of this Article shall have jurisdiction and authority to interpret and apply the provision of this Agreement

> insofar as shall be necessary to the determination of such grievance, but he shall not have jurisdiction or authority to alter in any way the provisions of the Agreement.

(R. 1-2 at 46-47, Pg ID at 56-57).

On November 1, 2009, the instant dispute between the parties arose when the Pension Trust notified the Company that it was increasing the Company's required minimum contribution rate annually over the next five years. (R. 1 at 4-5, Pg ID at 4-5). While Appendix A sets the Company's contribution rate for each employee at $2.25 per hour worked in 2010 and at $2.30 for 2011 through 2014, the Pension Trust sought to increase the Company's contribution rate to $2.835 in 2010, $3.57 in 2011, $4.305 in 2012, $5.04 in 2013 and $5.775 in 2014. (R. 1 at 4, Pg ID at 4). The Company informed the Pension Trust that it would not agree to the increase because the new minimum contribution rates contravened the previously negotiated rates set forth in Appendix A. (R. 11 at 3, Pg ID at 198). The Pension Trust proceeded to warn the Company that it would be expelled if it did not agree to the new rates. (R. 11 at 3, Pg ID at 198). In turn, the Company began negotiations with the Union to address the Pension Trust's attempts to enact a unilateral rate increase. (R. 11 at 3, Pg ID at 198). The parties, however, were not able to resolve the dispute. (R. 11 at 4, Pg ID at 199).

Consequently, on December 1, 2010, the Pension Trust expelled the Company and stopped accepting its contributions. (R. 11 at 4, Pg ID at 199). Since then, the Company has placed the funds earmarked for the Pension Trust, which were calculated under the rates specified in Appendix A, into an "an escrow-like account." (R. 11 at 4, Pg ID at 199). On January 7, 2011, James A. Pressley ("Pressley"), an International Vice President of the Union, informed the Company by letter

that the contributions should not be placed in an "escrow-like account," but instead should be added to the employees' hourly wages:

> It is the position of the Union that contributions to the Boilermakers-Blacksmith National Pension Plan provided in Appendix A (Benefits Agreement) of the current Collective Bargaining Agreement should be restored to the Bargaining Unit Employee's Hourly Rate effective December 1, 2010. Please be advised that if the monies are not added to the Bargaining Unit Employee's Hourly Rate such will be considered a violation of the Collective Bargaining Agreement and a grievance will be forthcoming.

(R. 11 at 4, Pg ID at 199).

The Company rejected Pressley's request, stating that, in its view, neither Article VII nor Appendix A "expressly provide[s] for the contribution payable to the [Pension Trust] to be paid as wages to the [Company's employees]." (R. 11 at 7, Pg ID at 202). In response, on January 24, 2011, Pressley submitted another letter to the Company initiating the Grievance Procedure set forth in Article XII. (R. 11 at 5, Pg ID at 200). Pressley claimed that this letter contained a "grievance" as defined by the CBA and again requested that the amounts formerly paid by the Company to the Pension Trust now be paid to employees as part of their hourly wages. (R. 11 at 5, Pg ID at 200). At a March 17, 2011 meeting between the parties, and in a follow-up March 25, 2011 letter, the Union's attorney, James R. Waers ("Waers"), reiterated the grievance and explained the Union's position:

> You requested that we state our position. We told you that the pension amount should be paid directly as employee wages. You asked for the basis of our argument. We stated that the pension contributions were part of the economic package negotiated for the benefit of employees. Through the [Company's] action in not meeting its obligations to continue participation in the [Pension

> Trust], these amounts have not been paid to the [Pension Trust]. As these amounts were part of the negotiated economic package for the benefit of employees, the intent of the parties was that these amounts should benefit the bargaining unit employees. However, since the [Company] has failed to make the necessary contributions to remain in good standing in the [Pension Trust], these amounts should be paid directly to employees.

(R. 6-3 at 2, Pg ID at 163). Additionally, Waers proposed that the parties waive the remaining steps of the Grievance Procedure and proceed directly to arbitration to resolve the dispute. (R. 6-3 at 2-3, Pg ID at 163-64).

On April 14, 2011, the Company rejected the Union's proposal, noting in a letter to Waers that "the contract [does not] support arbitration of such a claim, or even provide jurisdiction for such a claim to be heard." (R. 6-4 at 2, Pg ID at 167). The Company questioned the arbitrability of the Union's claim on the grounds that the Union was seeking to have the terms of the CBA altered through arbitration in contravention of Article XII, which expressly states that an arbitrator lacks authority and jurisdiction to alter the terms of the CBA. (R. 6-4 at 2, Pg ID at 167 ; R. 1-2 at 46-47, Pg ID at 56-57).

On April 29, 2011, Waers called upon the Company to file a joint request for the appointment of an arbitration panel to resolve the dispute. (R. 6-7 at 1, Pg ID at 174). The Company responded on May 20, 2011 by filing a complaint commencing an action for a declaratory judgment in the district court seeking a ruling that "[the Union] may not seek or compel arbitration of the Grievance and . . . that [the Company] is not obligated to participate in an arbitration of the Grievance." (R. 1 at 10, Pg ID at 10). Then, on July 22, 2011, the Union filed a counterclaim seeking an order to compel the parties to proceed to arbitration on the grounds that "[t]he subject

matter of the Union's Grievance is within the scope of the grievance and arbitration provisions of the [p]arties' CBA." (R. 6 at 13, Pg ID at 94). The parties filed cross motions for summary judgment. (R. 11 at 1, Pg ID at 191; R. 12 at 1, Pg ID at 214). The district court granted summary judgment in favor of the Company "because of the jurisdictional limit in Article XII [of the CBA]." In its opinion, the district court reasoned:

> [The Union's] grievance does not seek to enforce the parties' agreement, but to alter it —to amend the applicable scales to account for the pension trust's decision to refuse contributions. [The Union's] proposal may be a reasonable solution to an unforeseen change in circumstances. The proposed alteration, however, does not interpret or apply the collective bargain[ing] agreement's terms. It contradicts them. [The Company] is not required to arbitrate this proposed alteration to the collective bargaining agreement.

(R. 18 at 2, Pg ID at 414). The Union now appeals.

We review the district court's decision to grant the Company's motion for summary judgment and to deny the Union's motion for summary judgment de novo. *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). Similarly, we review "de novo the district court's decision [whether or not] to compel arbitration of a particular dispute." *Id*.

## DISCUSSION

We begin with "the presumption that national labor policy favors arbitration." *Id*. With that policy in mind, we analyze questions of arbitrability by applying the principles set forth by the Supreme Court in three cases that have become known as the "*Steelworkers Trilogy*." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Am.*

*Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960); *see also AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643 (1986).

Under this trilogy, "the question of arbitrability —whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance— is undeniably an issue for judicial determination." *AT & T Techs., Inc.*, 475 U.S. at 649. As the Supreme Court explained:

> The Congress . . . has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration*, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made.*

*Warrior & Gulf Nav. Co.*, 363 U.S. at 582 (emphasis added). The emphasized language suggests a two-fold inquiry. The first is whether the reluctant party has agreed to arbitrate the grievance, and the second is whether it has given the arbitrator the power to make the award. *See Paper, Allied Indus., Chem. & Energy Workers Int'l Union v. Air Products & Chems., Inc.*, 300 F.3d 667, 678 (6th Cir. 2002); *Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154 (6th Cir. 1982) (per curiam). Of course, the second inquiry assumes a case has gone to arbitration and the arbitrator has made an award that is challenged by one of the parties.

In this case, we deal with a pre-arbitration challenge by the Company to the application of this arbitration clause based on the foregoing limitation. This complicates somewhat the inquiry that we are called upon to make. If this were an appeal challenging an award made by the arbitrator, we

would ask whether the award "draws its essence from the collective bargaining agreement" —a phrase which "in meaning if not in words" simply asks "whether the arbitrator had exceeded the powers delegated to him by the parties." *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 184 (7th Cir. 1985) (Posner, J.). We have likewise held that the test embodied in the phrase "draws its essence from the collective bargaining agreement" requires us to "examine the award to determine if it is fundamentally at odds with the collective bargaining agreement because arbitrators do not have the authority to disregard or modify plain and unambiguous provisions of the agreement." *Morgan Servs., Inc. v. Local 323, Chicago & Cent. States Joint Bd., Amalgamated Clothing & Textile Workers Union, AFL-CIO*, 724 F.2d 1217, 1220 (6th Cir. 1984) (internal quotations and citations omitted); *see also Salary Policy Employee Panel v. Tennessee Valley Auth.*, 731 F.2d 325, 331-32 (6th Cir. 1984).

Where a reluctant party seeks to enjoin arbitration, this is not an exercise in which a court can engage because there is no award to test against the applicable standard. Instead, a court is being asked to decide in advance that any remedy the arbitrator could award would not be consistent with his authority under the collective bargaining agreement. Because a labor arbitrator is more knowledgeable and better acquainted with the collective bargaining process than a district judge, there is an argument to be made that he should be given an opportunity to exercise his judgment in formulating a remedy subject to subsequent review under the post-award review standard. Thus, the appropriate standard at the threshold of the arbitration process should be informed by the presumption in favor of arbitrability that normally prevails in a proceeding to compel arbitration of a collective bargaining agreement governed by a "broad" arbitration clause. *Teamsters Local Union*

*No. 89 v. Kroger Co.*, 617 F.3d 899, 904-5 (6th Cir. 2010). A party seeking to enjoin arbitration based on the authority of the arbitrator should bear the burden of overcoming that presumption.

Turning to the present case, the relevant portion of the CBA's arbitration clause provides:

> An arbitrator to whom *any* grievance shall be submitted in accordance with the provisions of this Article shall have jurisdiction and authority to interpret and apply the provision of this Agreement insofar as shall be necessary to the determination of such grievance, *but he shall not have jurisdiction or authority to alter in any way the provision of the agreement*.

(R. 1-2 at 46-47, Pg ID at 66-67) (emphasis added). We assume, without deciding, that the CBA's arbitration clause can be described as "broad" because it contains language found in similar clauses that have been so construed. *See e.g.*, *United Steelworkers of Am. v. Mead Corp., Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir. 1994). We likewise assume that the dispute over whether the Company breached the CBA would be subject to arbitration notwithstanding the fact that the Company appears to be without fault. The issue then turns on whether we can say with positive assurance that the restriction on the authority of the arbitrator "to alter in any way the provisions of the agreement" is susceptible to an interpretation that would justify the award that the Union seeks. *AT & T Techs.*, *Inc.*, 475 U.S. at 650.

The Union argues that, "[n]otwithstanding the Pension Trust's refusal to accept any further contributions from the Company, . . . the Company is violating the CBA by paying less than the complete economic package that it agreed to pay for its employee's benefits." Appellant's Br. at 18. Moreover, it continues, "the Company should be required to continue making these payments

for the benefit of its employees in the form of wages." Appellant's Br. at 18. Thus, as the Union has repeatedly told the Company:

> It is the position of the Union that contributions to the Boilermakers-Blacksmith National Pension Plan provided in Appendix A (Benefits Agreement) of the current Collective Bargaining Agreement should be restored to the Bargaining Unit Employee's Hourly Rate effective December 1, 2010. Please be advised that if the monies are not added to the Bargaining Unit Employee's Hourly Rate such will be considered a violation of the Collective Bargaining Agreement and a grievance will be forthcoming.

(R. 11 at 4, Pg ID at 199).

On its face, as we have previously observed, we assume that a dispute over whether the Company breached its obligation under the CBA, would fall within the broad scope of the provisions of the arbitration clause. Nevertheless, there remains the second step of the inquiry which the Supreme Court held is for a court to decide, namely, whether the reluctant party agreed to give the arbitrator the power to make the award that, in this case, the Union seeks. *Util. Workers Union of Am., Local 118 v. Ohio Edison Co.*, No. 97-4332, 1998 WL 869941, at *3 n.1 (6th Cir. Dec. 3, 1998) (per curiam). We believe that in this case it is possible to say with positive assurance that the language of the arbitration clause is not susceptible to an interpretation that would allow an arbitrator to convert the pension contributions into hourly wages. Such an exercise, which is the only remedy the Union seeks, would require the arbitrator to alter two separate provisions of the CBA —one that establishes hourly wage scales, Article VII, and another that establishes contribution rates to the Pension Trust, Appendix A. As the district court aptly observed, the remedy sought by the Union, if awarded by the arbitrator, would alter the CBA by "taking two

existing scales (the standard hourly wage scales and pension contribution scales) and combining them to come up with a new set of scales." (R. 18 at 9, Pg ID at 421).

An analysis of the effect of such an alteration only serves to confirm this conclusion. As we earlier observed, a "Dock Technician I" earns $19.00 per hour in year one of the Agreement, $19.25 in year two, $19.73 in year three and $20.22 in year four. (R. 1-2 at 16, Pg ID at 26). The Company is required to contribute for each hour worked by the employee $2.10 to the Pension Trust in year one of the Agreement, $2.20 in year two, $2.25 in year three and $2.30 in year four. (R. 1-2 at 56, Pg ID at 66). If the arbitrator made the award that the Union's grievance sought, that same Dock Technician I who was earning $19.73 per hour in the year that the Company was expelled from the Pension Trust would receive a $2.25 hourly wage increase, now would earn $21.98 per hour. Moreover, a dollar paid in the form of a wage is not equivalent to a dollar paid in the form of a pension contribution. Unlike pension contributions, wages are subject to federal payroll taxes. Indeed, "the payroll costs associated with every dollar of wages paid to an employee at [the Company's] Plant include FICA and Medicare 7.65%, workers compensation 4%, overtime and other premiums 30%, for a total of 41.65%." (R. 13-2 at 2, Pg ID at 368). Of course, any increase in an amount equal to the pension contribution rate would not even make the employees whole because their wages also are subject to both FICA and income taxes. This remedy is not one that the arbitrator has the authority to award. Consequently, the Company's motion for a declaratory judgment that the Union may not seek or compel arbitration was properly granted.

**CONCLUSION**

The judgment of the district court is affirmed.

No. 12-1633, *O-N Minerals Co. v. Int'l Bhd. of Boilermakers, et al.*

**KAREN NELSON MOORE, DISSENTING.** The majority holds that the Union's grievance is not arbitrable because the Company did not "agree[] to give the arbitrator the power to make the award that, in this case, the Union seeks." Maj. Op. at 11. However, the arbitrator's authority to resolve a dispute does not turn on whether the parties have requested a precise remedy, which the arbitrator in its discretion may or may not award. I believe that the dispute involving the Company's compliance with the pension provisions of the CBA was arbitrable under the Agreement's terms, and I therefore respectfully dissent.

It is true, as the majority asserts, that neither party may "be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration." *United Steelworkers v. Mead Corp., Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir. 1994). But the Company and the Union did obligate themselves under the terms of the CBA to arbitrate grievances that failed to reach resolution through more informal dispute-resolution processes. "Grievance" is a broadly defined term: it covers any "complaint or request of an employee which *involves the interpretation or application of, or compliance with*, the provisions of this Agreement." R. 1-2 (CBA at 43) (Page ID #53) (emphasis added). The gravamen of the Union's complaint was that the Company was no longer in compliance with the pension provisions of Appendix A. Thus, because informal resolution processes failed, the Union's complaint appears to be a grievance subject to arbitration.

My fundamental disagreement with the majority is over its interpretation of the provision of the CBA that describes the arbitrator's authority. The CBA provides that an impartial arbitrator "shall have jurisdiction and authority to interpret and apply the provision of this Agreement insofar as shall be necessary to the determination of such grievance, but he shall not have jurisdiction or

No. 12-1633, *O-N Minerals Co. v. Int'l Bhd. of Boilermakers, et al.*

authority to alter in any way the provision of the Agreement." *Id.* at 46–47 (Page ID #56–57). The majority asserts that the final clause of this provision excludes a complaint from an arbitrator's authority if a party proposes a desired remedy in addition to making a complaint and if the proposed remedy would require a change in the terms of the CBA. In adopting this interpretation, the majority assumes that the arbitrator would accede to the Union's request for a specific remedy—namely, the transfer of pension payments to flat wage payments—and concludes that, because the requested remedy would exceed the scope of the arbitrator's authority, the grievance need not be submitted to arbitration at all.

But the majority's assumption impermissibly invades the arbitrator's jurisdiction. An arbitrator is not cabined by the "'technical limits of the submission.'" *See Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union*, 700 F.3d 891, 902 (6th Cir. 2012) (quoting *Johnston Boiler Co. v. Local Lodge No. 893, Int'l Bhd. of Boilermakers*, 753 F.2d 40, 43 (6th Cir. 1985)). Indeed, "[b]ecause the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 765 (1983). Thus, although the Union made a specific request for the pension funds to be redistributed to its members as flat wages, the arbitrator would not be bound to consider only the Union's proposal. Instead, the arbitrator has the authority to consider a range of available solutions, some of which would not require an alteration in the terms of the CBA.

- 15 -

The majority's discussion is thus premature. The final clause of the contractual provision at issue is a limitation upon the scope of authority only *once a grievance has entered arbitration.* It limits the range of remedies an arbitrator may fashion, but not the arbitrator's threshold ability to consider the grievance. *See United Steelworkers v. Timken Co.*, 717 F.2d 1008, 1014–15 (6th Cir. 1983). We may engage in the analysis utilized by the majority here only *after* the arbitrator makes an award.

To be sure, there may be a narrow class of grievances that are beyond the authority of the arbitrator because they can be settled only by imposing new terms. However, such grievances arise when the parties seek resolution of issues entirely neglected by the CBA. *See Pennsylvania Power Co. v. Local Union #272, IBEW*, 886 F.2d 46, 48 (3d Cir. 1989) (compensation for a newly created welder position); *Lodge 802, Int'l Bhd. of Boilermakers v. Pennsylvania Shipbuilding Co.*, 835 F.2d 1045, 1046 (3d Cir. 1987) (wages for a new job duty not addressed in the CBA). The Union does not seek for the arbitrator to supply "new" terms here, but rather to interpret the existing terms in light of an unanticipated situation. *See Pennsylvania Power Co.*, 886 F.2d at 48 (concluding that a clause similar to the one at issue in the instant case "limit[ed] the scope of arbitrable issues to those involving the interpretation or application of terms and conditions of employment that *the parties have themselves agreed to in their contract*") (internal quotation marks omitted and emphasis added). The parties agreed here that the Company would pay wages and pension funds in defined amounts, and the arbitrator must interpret how those terms will operate now that the Pension Trust has become unavailable.

No. 12-1633, *O-N Minerals Co. v. Int'l Bhd. of Boilermakers, et al.*

This deference to the arbitrator's authority is consistent with the "strong presumption" of arbitrability applied to complaints arising under broad arbitration clauses. *Teamsters Local Union No. 89 v. Kroger Co.*, 617 F.3d 899, 905 (6th Cir. 2010); *see also Mead*, 21 F.3d at 131. The Company cannot overcome this presumption because the CBA does not expressly exclude complaints with impermissible proposed remedies from arbitration. *See Mead*, 21 F.3d at 131. Nor is there other "forceful evidence of a purpose to exclude the claim from arbitration." *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986) (internal quotation marks omitted).

Our "limited function" as a federal court "is to ascertain whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 419 (6th Cir. 2007) (en banc) (internal quotation marks omitted). At this point, I cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650. Therefore, the claim is arbitrable, and the district court erred in granting summary judgment in favor of the Company. I would instead grant summary judgment in favor of the Union and compel the Company to enter arbitration. Accordingly, I respectfully dissent.