RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0208p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

BAKERY, CONFECTIONERY, TOBACCO WORKERS AND
GRAIN MILLERS, INTERNATIONAL UNION AFL-CIO;
LOCAL UNION NO. 3-G, BAKERY, CONFECTIONERY,
TOBACCO WORKERS AND GRAIN MILLERS,

  *Plaintiffs-Appellees*,

  *v.*

KELLOGG COMPANY,

  *Defendant-Appellant*.

No. 17-2449

———————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:16-cv-01180—Gordon J. Quist, District Judge.

Argued:  August 1, 2018

Decided and Filed:  September 19, 2018

Before:  SILER, MOORE, and GRIFFIN, Circuit Judges.

———————

## COUNSEL

**ARGUED:**  Craig H. Lubben, MILLER JOHNSON, Kalamazoo, Michigan, for Appellant.
Devki K. Virk, BREDHOFF & KAISER, P.L.L.C., Washington, D.C., for Appellees.
**ON BRIEF:**  Craig H. Lubben, Keith E. Eastland, MILLER JOHNSON, Kalamazoo, Michigan,
for Appellant.   Devki K. Virk, April H. Pullium, BREDHOFF & KAISER, P.L.L.C.,
Washington, D.C., Gordon A. Gregory, GREGORY, MOORE, JEAKLE & BROOKS, PC,
Detroit, Michigan, for Appellees.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  Kellogg Company ("Kellogg") appeals the district court's grant of the motion of the Bakery, Confectionery, Tobacco Workers and Grain Millers, International Union AFL-CIO, CLC ("International Union") and Local Union 3-G, Bakery, Confectionery, Tobacco Workers and Grain Millers ("Local Union 3-G") (together, "Unions") to compel arbitration.  For the following reasons, we **AFFIRM** the district court's judgment.

## I.  BACKGROUND

### A.  Factual Background

Local Union 3-G represents the employees at Kellogg's ready-to-eat-cereal production plant in Battle Creek, Michigan, during collective bargaining.  *See* R. 7 (Am. Compl. ¶¶ 3, 4) (Page ID #495).  Local Union 3-G is also affiliated with the International Union, which represents employees at additional Kellogg's plants.  *Id.* ¶ 3 (Page ID #495).  "Regular" employees and "non-regular" employees, including casual employees, make up this bargaining unit at Battle Creek.  R. 11-1 (Mot. Ex. 1, Bidelman Aff. ¶ 10) (Page ID #970); R. 24-2 (Mot. Ex. A, Kellogg Post-Hr'g Br. at 11) (Page ID #1735).  The issues in this action stem from several agreements—the Master Agreement, the Battle Creek Supplemental Agreement, the Memorandum of Agreement, and the 2015 Master Agreement.  *See* R. 7 (Am. Compl. ¶¶ 7, 8) (Page ID #496).

The Master Agreement is a contract between Kellogg, the International Union, and the local unions at all four plants.  R. 7-1 (Am. Compl. Ex. A, Master Agree. at iii) (Page ID #504).  According to the Master Agreement, "[t]he collective bargaining agreement for each of the bargaining units at the Company's plants shall be this Agreement and the Supplemental Agreements between the Company and the Local Union at each respective plant."  *Id.* at 1 (Page ID #506).  In section 1.01(d), under the heading "scope of the agreement," the Master Agreement states that "[t]he term 'employees' whenever used in this Agreement and for the purposes hereof

shall include all those employees included in each bargaining unit as defined in each Supplemental Agreement." *Id.* at 2 (Page ID #507). Section 7.01(a), under the heading "grievance procedure," then states that "[a] grievance is defined as any dispute involving the application or interpretation of any provision of this Agreement." *Id.* at 44 (Page ID #549). Under section 7.02(a), which is under the heading "arbitration of grievances," the Master Agreement states that "[i]n the event that a grievance arising under either this Agreement or under one of the respective Supplemental Agreements is not settled during the grievance procedure, the Union may submit the grievance to arbitration." *Id.* at 45–46 (Page ID #550–51). The Master Agreement also states in section 7.02(e) that "[t]he Arbitration Board shall have no power to add to, take from, amend, modify or alter this Agreement or any Supplemental Agreement." *Id.* at 48 (Page ID #553).

The Battle Creek Supplemental Agreement, in contrast, is an agreement between Local Union 3-G and Kellogg. R. 7-2 (Am. Compl. Ex. B, Suppl. Agree. at 1) (Page ID #619). Under the heading "eligibility," section 201(a) states that "[b]y the terms of this Supplemental Agreement, which covers only employees within the bargaining unit, the Company recognizes the Union as the sole bargaining representative for all employees in the bargaining unit." *Id.* at 2 (Page ID #620). Section 201(b) then states that "[t]he bargaining unit is composed of all regular hourly employees in the Battle Creek plant of the Company." *Id.* Under section 301, which is under the heading "grievance procedure," the Supplemental Agreement states that "[a] grievance is defined as any complaint, dispute, or difference of opinion concerning any matter." *Id.* at 12 (Page ID #630). Step 5 of section 302 then states that "[i]f a settlement cannot be reached . . . the matter will be submitted to arbitration in accordance with the procedure provided in Section 7.02 of the Master Agreement." *Id.* at 14 (Page ID #632).

The Memorandum of Agreement is appended to the Battle Creek Supplemental Agreement. R. 7-2 (Am. Compl. Ex. B, Mem. Agree. at 75–121) (Page ID #693–738). Under the heading "guidelines for utilization of casual employees," the Memorandum of Agreement states that "[t]he purpose of this program is to provide regular employees with relief from extended work schedules through the use of Casual employees" and that "Casual employees will not be utilized when regular employees are on layoff . . . or when regular employees want to

work overtime." *Id.* at 84 (Page ID #701). Paragraph 1 under the same heading then states that "[t]he terms and conditions of the Supplemental and Master Agreements will not apply to Casual employees. Only the following fringe benefits will be granted to Casual employees, and they will not accumulate seniority: Uniforms[,] Lunch and Breaks[,] Shift Differential[,] Wage Appendix of the Master Agreement-COLA." *Id.* For casual employees, paragraph 8 then states that "[t]he Company may discontinue employment without such action being subject to the grievance procedure." *Id.* at 86 (Page ID #703).

On July 15, 2015, Kellogg and the Unions entered into the 2015 Master Agreement, which amended the Master Agreement and the Battle Creek Supplemental Agreement. R. 7-3 (Am. Compl. Ex. C, 2015 Master Agree.) (Page ID #739). This 2015 Master Agreement "established wage rates, a signing ratification bonus for all employees, the establishment of a transitional employee classification to replace casual employees, and other changes in terms and conditions of employment for all bargaining unit employees at the Battle Creek plant." R. 7 (Am. Compl. ¶ 8) (Page ID #496). The ratification bonus was for $15,000. *Id.* ¶ 9 (Page ID #496). After the ratification vote occurred, however, Kellogg "refused and failed to pay a ratification bonus to former casual employees (transitional employees as of August 4, 2016), seasonal employees and a few regular employees who were on the payroll on August 2, 2015." *Id.* at ¶ 14 (Page ID #497). The parties then went through steps of the grievance procedures, but Kellogg refused to arbitrate the ratification bonus dispute because it contended that the arbitration provisions do not apply to casual employees. *Id.* ¶¶ 16–22 (Page ID #497–99).

**B. Procedural Background**

On September 26, 2016, Local Union 3-G filed a complaint against Kellogg in the United States District Court for the Western District of Michigan because of Kellogg's refusal to arbitrate. R. 1 (Compl.) (Page ID #1). Local Union 3-G later amended the complaint to add the International Union as a plaintiff. R. 7 (Am. Compl.) (Page ID #494). The Unions then moved to compel arbitration. R. 11 (Mot.) (Page ID #953). Kellogg responded, contending that the district court should not compel arbitration because (1) judicial estoppel prevents the International Union from arguing that the arbitration provisions apply, (2) the arbitration

provisions do not cover the claims in this action, and (3) the relief requested is beyond the arbitrator's authority.  R. 12 (Resp. at 14, 16, 20) (Page ID #996, 998, 1002).

Kellogg alleged that judicial estoppel applies because of our decision in *Kellogg Co. v. NLRB*, 840 F.3d 322 (6th Cir. 2016).[1]  *Id.* at 8 (Page ID #990).  That Sixth Circuit case dealt with a Supplemental Agreement (hereinafter, the "Memphis Supplemental Agreement") between Kellogg and Local Union 252-G, which was the local union for Kellogg's Memphis plant.  *See Kellogg*, 840 F.3d at 324–25.  The International Union was also a party in the Memphis action. *Id.* at 322.  Kellogg now contends in the Battle Creek action that the Memphis Supplemental Agreement and the Battle Creek Supplemental Agreement have nearly identical language regarding casual employees.  R. 12 (Resp. at 8) (Page ID #990).  According to Kellogg, "[t]he International and Local Unions successfully argued and admitted to the Sixth Circuit that casual employees, under contract language virtually identical to the language in the Battle Creek Agreement, were not covered by the arbitration provisions in the Master or Supplemental Agreements" in the Memphis action.  *Id.* at 9 (Page ID #991) (emphasis omitted).

In the Battle Creek action, the district court determined that judicial estoppel did not apply.  *Bakery, Confectionery, Tobacco Workers Local Union 3-G v. Kellogg Co.*, No. 1:16-CV-1180, 2017 WL 4021012, at *5 (W.D. Mich. Sept. 13, 2017), *order vacated on reconsideration*, No. 1:16-CV-1180, 2017 WL 6880096 (W.D. Mich. Oct. 19, 2017).  In the same initial opinion, however, the district court determined that the claims in the Battle Creek action were not arbitrable even though judicial estoppel did not apply because casual employees were not in the bargaining unit.  *Id.* at *5.  Based on this understanding, the district court denied the Unions' motion to compel arbitration.  *Id.* at *6.

The Unions then moved for reconsideration of the denial of their motion to compel arbitration.  R. 24 (Mot.) (Page ID #1702).  In their briefing, the Unions informed the district court that "casual employees (and other 'non-regular' employees) are unquestionably in the bargaining unit, at Battle Creek and at Kellogg's other ready-to-eat-cereal plants."  R. 24-1 (Mot. Br. at 1) (Page ID #1705) (emphasis omitted).

---

[1]For clarity, we will refer to the action before this panel as the "Battle Creek action," and we will refer to the action in *Kellogg*, 840 F.3d at 322, as the "Memphis action."

The district court then examined the Unions' motion for reconsideration without requesting a response from Kellogg. *See Bakery, Confectionery, Tobacco Workers Local Union 3-G v. Kellogg Co.*, No. 1:16-CV-1180, 2017 WL 6880096, at *1 n.1 (W.D. Mich. Oct. 19, 2017). According to the district court, its conclusion that casual employees were not part of the bargaining unit "was a mistaken factual conclusion because the parties *do* consider casual employees part of the bargaining unit." *Id.* at *2. In light of this mistake, the district court reevaluated the Unions' motion to compel arbitration, vacated its prior order and opinion, and granted the Unions' motion to compel arbitration. *Id.* at *3.

Because the district court determined that the case needed to proceed in arbitration, the district court entered a final judgment. R. 29 (J.) (Page ID #1910). Kellogg then moved for reconsideration and to amend the judgment. R. 30 (Mot.) (Page ID #1911). Kellogg also appealed the district court's judgment and its order granting the Unions' motion for reconsideration. R. 31 (Notice of Appeal) (Page ID #1935). The district court denied Kellogg's motion for reconsideration, R. 36 (Order at 3) (Page ID #1991), and Kellogg filed an amended notice of appeal, R. 37 (Am. Notice of Appeal) (Page ID #1992).

## II. DISCUSSION

### A. The International Union is not judicially estopped from arguing that the arbitration clauses apply in this action.[2]

We examine de novo judicial estoppel. *See In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017) (en banc). The Supreme Court has determined that there are three factors that are helpful to consider for this analysis:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would

---

[2]The International Union was a party in the Memphis action. Local Union 3-G, however, was not. Therefore, this section applies only to the International Union.

derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (quotations and citations omitted).

Kellogg has not shown that judicial estoppel applies. First, Kellogg contends that, in the Memphis action, the International Union argued that the arbitration provisions do not apply to casual employees, which is contrary to the position that the International Union now asserts in this action. *See* Appellant's Br. at 28. To support its argument, Kellogg cites various portions of the International Union's Memphis-action filings. *Id.* at 13–15. Kellogg's reliance on these documents, however, is misleading because, in the paragraphs that Kellogg cites, the International Union simply summarized Kellogg's proposed contractual changes and Kellogg's own internal notes. *See id.* Next, we, the district court, and the NLRB in the Memphis action did not adopt the International Union's alleged argument that the arbitration provisions do not cover casual employees. *See Kellogg Co.*, 840 F.3d at 325–26; *McKinney v. Kellogg Co.*, 33 F. Supp. 3d 937, 942 (W.D. Tenn. 2014); *Kellogg Co.*, 362 N.L.R.B. 86, at \*13 (2015). Lastly, Kellogg has not shown that the International Union will receive an unfair advantage because a court has not accepted the International Union's alleged arguments. Furthermore, it is difficult to see how Kellogg will experience prejudice when we ultimately agreed with Kellogg's argument in the Memphis action. *See Kellogg*, 840 F.3d at 333. Thus, judicial estoppel does not apply.

## B. The arbitration clauses in the Master Agreement and the Battle Creek Supplemental Agreement apply to the claims in this action.

We review de novo a district court's decision to compel arbitration. *United Steelworkers v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). "[W]e must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." *Teamsters Local Union 89 v. Kroger Co.*, 617 F.3d 899, 904 (6th Cir. 2010) (quoting *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 561 (6th Cir. 2008)).

We have highlighted several principles to consider when determining whether a district court correctly compelled arbitration:

> (1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

*Id.* (quoting *United Steelworkers v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994)).

Additionally, we "begin with the presumption that national labor policy favors arbitration." *Cooper Tire*, 474 F.3d at 277. "The presumption in favor of arbitration applies with particular force in labor disputes between an employer and a union." *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 288 (6th Cir. 2014). "In cases involving broad arbitration clauses, moreover, [we] ha[ve] 'found the presumption of arbitrability particularly applicable,' and arbitration will be denied only if an express provision excludes a particular grievance from that forum." *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 485–86 (6th Cir. 2006) (quoting *Mead Corp.*, 21 F.3d at 131). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Parcel*, 748 F.3d at 288 (alteration in original) (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986)). "Furthermore, any '[d]oubts should be resolved in favor of coverage.'" *Id.* at 288–89 (alteration in original) (quoting *AT & T Techs.*, 475 U.S. at 650).

"The starting point is . . . the language of the Collective Bargaining Agreement." *Salary Policy Emp. Panel v. Tenn. Valley Auth.*, 149 F.3d 485, 491 (6th Cir. 1998). "[E]xtrinsic evidence . . . can be considered under the Collective Bargaining Agreement where the language is ambiguous." *Id.* at 493. We have stated, however, "that such extrinsic evidence should be considered by a court only where the language of the Collective Bargaining Agreement is ambiguous." *Id.* at 490.

### 1.  Contractual Language

#### a.  Presumption of Arbitrability

When a collective bargaining agreement has a broad arbitration clause, the presumption of arbitrability is particularly applicable.  *AT & T Techs.*, 475 U.S. at 650.  Courts have found that arbitration clauses covering all disputes arising from a collective bargaining agreement to be broad.  *See, e.g.*, *id.* (holding that the presumption was "particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder'"); *United Steel Workers v. Century Aluminum*, 157 F. App'x 869, 873 (6th Cir. 2005) (concluding that the presumption applied because the arbitration clause covered "disputes concerning the interpretation or application of or compliance with the provisions of" the collective bargaining agreement); *Mead Corp.*, 21 F.3d at 132 (concluding that the presumption applied because the arbitration clause covered "grievances charging that the Company has violated this Agreement and involving the interpretation of, or compliance with, this Agreement").

The Master Agreement and the Battle Creek Supplemental Agreement contain broad arbitration clauses.  For instance, the Master Agreement states the following regarding arbitration:

> **ARTICLE 7**
>
> **GRIEVANCE PROCEDURE**
>
> **Section 7.01**
>
> (a)    A grievance is defined as any dispute involving the application or interpretation of any provision of this Agreement. . . .
>
>         . . . .
>
> **ARBITRATION OF GRIEVANCES**
>
> **Section 7.02**
>
> (a)    In the event that a grievance arising under either this Agreement or under one of the respective Supplemental Agreements is not settled during the grievance procedure, the Union may submit the grievance to arbitration. . . .

R. 7-1 (Am. Compl. Ex A, Master Agree. at 44, 45–46) (Page ID #549, 550–51).  The Battle Creek Supplemental Agreement contains similar language:

> **ARTICLE III**
>
> GRIEVANCE PROCEDURE
>
> **Section 301**
>
> A grievance is defined as any complaint, dispute, or difference of opinion concerning any matter. . . .
>
> **Section 302**
>
>         . . . .
>
> **Step 5.**    THE UNION NEGOTIATIONS COMMITTEE AND THE MANAGEMENT NEGOTIATIONS COMMITTEE. . . . . If a settlement cannot be reached at this point within a reasonable time . . . , the matter will be submitted to arbitration in accordance with the procedure provided in Section 7.02 of the Master Agreement.

R. 7-2 (Am. Compl. Ex. B, Suppl. Agree. at 12, 14) (Page ID #630, 632).  Based on the language in these two contracts, if a settlement is not possible, then *any* type of dispute will proceed in arbitration.   By including all-encompassing arbitration provisions, the presumption of arbitrability applies.

### b.  Scope of Exclusion of Arbitrability

When an arbitration clause " is 'equally consistent with opposing interpretations, and the language employed does not clearly and unambiguously describe[ ] the issue or issues excluded from arbitration, the . . . language cannot be said to *expressly exclude* that issue.'" *Int'l Ass'n of Machinists v. ISP Chems., Inc.*, 261 F. App'x 841, 847 (6th Cir. 2008) (alterations in original) (quoting *Century Aluminum*, 157 F. App'x at 873–74).  When "we cannot say with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, [we] must resolve any doubts in favor of arbitration." *Id.* at 849.

The Memorandum of Agreement contains exclusions for when the arbitration provisions do not apply. For instance, it states the following regarding casual employees:

**GUIDELINES FOR UTILIZATION OF CASUAL EMPLOYEES**

. . . .

1.    *The terms and conditions of the Supplemental and Master Agreements will not apply to Casual employees.* Only the following fringe benefits will be granted to Casual employees, and they will not accumulate seniority:

• Uniforms

• Lunch and Breaks

• Shift Differential

• Wage Appendix of the Master Agreement-COLA

The wage rate is $6.00 less than the job rate for work performed. Once a job qualification is attained by the Casual employee, the employee is eligible for $3.00 less than job rate for all work performed.

. . . .

8.    *The Company may discontinue employment without such action being subject to the grievance procedure*.

R. 7-2 (Am. Compl. Ex. B, Mem. Agree. at 84–86) (Page ID #701–03) (emphasis added). Based on this language, paragraphs 1 and 8 in the Memorandum of Agreement outline the types of situations where arbitration does not apply.

Interpreting paragraph 1 is the trickiest, and there are at least two interpretations. First, paragraph 1 might be stating that *all* of the "terms and conditions of the Supplemental and Master Agreements will not apply to Casual employees." Under this interpretation, none of the arbitration provisions apply. Under the second interpretation, however, when considering the second sentence in paragraph 1 regarding fringe benefits, paragraph 1 might instead be referring to the portions of the "terms and conditions of the Supplemental and Master Agreements" that address "fringe benefits." Paragraph 1, therefore, could mean that the terms and conditions do not apply only to casual employees' fringe benefits. Furthermore, if paragraph 1 truly applied to *all* of the "terms and conditions of the Supplemental and Master Agreements," then paragraph 8 would not be necessary because the grievance procedures would already not apply under

paragraph 1.**3**  Because there are two reasonable interpretations of paragraph 1, paragraph 1 does not expressly exclude casual employees' complaints from arbitration.  *See United Parcel*, 748 F.3d at 288–89.

Fortunately, paragraph 8 is not as ambiguous.  Under paragraph 8, Kellogg can choose not to have a casual employee's grievance regarding the discontinuation of employment go to arbitration.  There does not appear to be, however, a second interpretation for this paragraph, so paragraph 8 describes an express limit to the arbitration provisions.  Nevertheless, the issue here is whether casual employees are entitled to the ratification bonus in the 2015 Master Agreement.  Because this action does not concern the discontinuation of employment, the exclusion in paragraph 8 does not apply.

## 2.  Extrinsic Evidence

"[I]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the *most forceful evidence* of a purpose to exclude the claim from arbitration can prevail."  *AT & T Techs.*, 475 U.S. at 650 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 584–85 (1960) (emphasis added)).  Kellogg contends again that the International Union's position that the arbitration provisions did not apply in the Memphis action is forceful extrinsic evidence proving that the parties did not intend to arbitrate their claims.  As discussed in the section regarding judicial estoppel, however, the International Union did not clearly adopt that position.

In summary, the presumption of arbitration applies in this action.  The Master Agreement and the Battle Creek Supplemental Agreement have broad arbitration language.  Additionally, the contractual language does not clearly exclude this action from arbitration.  Kellogg, furthermore, has not provided forceful evidence of intent not to have this action go to arbitration.  Therefore, the parties must arbitrate the claims in this action.

---

**3**Kellogg contends that paragraph 8 does not address "arbitration."  *See* Appellant's Br. at 45.  The Master Agreement, however, states that arbitration is one step in the grievance procedure.  R. 7-1 (Am. Compl. Ex. A, Master Agree. at 44, 45–46) (Page ID #549, 550–51).

## C.  An arbitrator would have authority to grant relief.

Kellogg contends that an arbitrator will not have authority to issue a remedy.  *See* Appellant's Br. at 50.  According to Kellogg, the Master Agreement and the Battle Creek Supplemental Agreement state that an arbitrator cannot alter the terms of the agreements.  *Id.* The 2015 Master Agreement contains the provision regarding the $15,000 ratification bonus.  *Id.* Because the 2015 Master Agreement modified only the Master Agreement, not the Battle Creek Supplemental Agreement, Kellogg argues that the Battle Creek Supplemental Agreement's statement that the terms and conditions of the Master Agreement do not apply to casual employees still stands.  *Id.*  Thus, according to Kellogg, the casual employees are still not entitled to the $15,000 ratification bonus, so the arbitrator would need to amend the Battle Creek Supplemental Agreement to grant relief.  *Id.*

For its argument, Kellogg relies on our decision in *O-N Minerals Co. v. International Brotherhood of Boilermakers*, 563 F. App'x 380 (6th Cir. 2014).  In *O-N Minerals*, we noted that there are two steps to determining whether to compel arbitration:  "The first is whether the reluctant party has agreed to arbitrate the grievance, and the second is whether it has given the arbitrator the power to make the award."  *Id.* at 384.  The arbitration clause in that action stated that an arbitrator "shall not have jurisdiction or authority to alter in any way the provision of the agreement."  *Id.* at 385 (emphasis omitted).  Because the union sought to combine two existing pay scales into an hourly wage, we held that the arbitrator would not have authority to grant relief.  *Id.* at 386.

Here, in contrast, an arbitrator would have authority to grant relief.  The Master Agreement states that "[t]he Arbitration Board shall have no power to add to, take from, amend, modify or alter this Agreement or any Supplemental Agreement."  R. 7-1 (Am. Compl. Ex A, Master Agree. at 48) (Page ID #553).  The section regarding arbitration in the Battle Creek Supplemental Agreement also states that section 7.02 of the Master Agreement applies.  R. 7-2 (Am. Compl. Ex. B, Suppl. Agree. at 14) (Page ID #632).  Under the 2015 Master Agreement, however, the "2015 Master Agreement supersedes any Seasonal and Casual language that conflicts with the Master or Supplemental Agreements."  R. 7-3 (Am. Compl. Ex. C, 2015 Master Agree. at 13) (Page ID #751).  Therefore, because the $15,000 ratification bonus is in the

2015 Master Agreement, if an arbitrator determines that casual employees are entitled to the bonus, the Battle Creek Supplemental Agreement does not stand in the way of an arbitrator having authority to grant relief.

### III.  CONCLUSION

For these reasons, we **AFFIRM** the district court's judgment.